**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-cv-24719-BLOOM/Elfenbein

YOENNY BATISTA MULET,

     Plaintiff,

v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

     Defendant.

_____/

## <u>ORDER ON DEFENDANT'S MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint and/or Alternatively Stay Proceedings and Administratively Close Case, ECF No. [11] ("Motion"). Plaintiff Yoenny Batista Mulet ("Plaintiff") filed a Response in Opposition, ECF No. [13]. The Court has reviewed the Motion, the Response, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted in part and denied in part.

### I.    BACKGROUND

#### A.  Statutory and Regulatory Framework

In general, adjustment of status is governed by 8 U.S.C. § 1255 and its implementing regulations. The Cuban Adjustment Act of 1966, Pub. L. No. 89–732, 801 Stat. 1161 (1966) ("CAA"), allows Cuban natives or citizens living in the United States who meet certain eligibility requirements to apply to become lawful permanent residents. The CAA provides that a native of Cuba who has (i) been inspected and admitted or paroled into the United States after January 1,

1959; and (ii) has been physically present in the country for at least one year, may apply to have his or her status adjusted to that of a lawful permanent resident, subject to the discretion of the Attorney General. *Id*. § 1.

On June 4, 2025, President Trump issued Presidential Proclamation 10949, titled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats." 90 Fed. Reg. 24497 (June 10, 2025). Invoking §§ 212(f) and 215(a) the INA, 8 U.S.C. §§ 1182(f) and 1185(a), the Proclamation imposed restrictions, limitations, and exceptions on the entry of aliens from 19 "high-risk" countries. *Id.* at 24499. Specifically, it fully suspended the entry of immigrants and non-immigrants from 12 countries and partially restricted entry from another seven countries, subject to certain categorical exceptions and case-by-case waivers. *Id*. Cuba was one of the seven partially restricted countries. *Id*.

On December 2, 2025, the United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), issued Policy Memorandum PM-602-0192, bearing the subject line, "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries." ECF No. [8-1] at 9. Policy Memorandum PM-602-0192 directed USCIS personnel to immediately place an "adjudicative hold" on any pending immigration benefit requests filed by non-citizens from the same 19 countries affected by Presidential Proclamation 10949, regardless of entry date. *Id.* at 10-11. Policy Memorandum PM-602-0192 stated that the hold would "remain in effect until lifted by the USCIS Director through a subsequent memorandum." *Id.*

On January 1, 2026, USCIS issued a second Policy Memorandum, PM-602-0194, which bore the subject line, "Hold and Review of USCIS Benefit Applications Filed by Aliens from

Additional High-Risk Countries," and stated that the guidance in PM-602-0192 remained in place. ECF No. [8-1] at 4. PM-602-0194 further explained that the "hold" on immigration benefit applications "allows a case to proceed through processing, up to a final adjudication"—that is, "the issuance of a final decision in a case, such as an approval, denial, or dismissal." *Id.* at 4 n.2.

### B.  Factual Background

Plaintiff filed an Amended Complaint[1] to challenge Defendant's inaction regarding the adjudication of his application to adjust his immigration status. ECF No. [8]. Plaintiff, a Cuban national, was paroled into United States on May 15, 2023. *Id.* ¶¶ 9-10. On May 20, 2024, Plaintiff submitted an application to USCIS to adjust his status ("Application") pursuant to the CAA. *Id.* ¶ 11. Plaintiff received confirmation of receipt from Defendant and submitted his fingerprints to support his Application. *Id.* ¶¶ 12-13. On October 13, 2025, sixteen months after he filed his Application, Plaintiff filed a complaint against Defendant to compel Defendant to act on his pending Application. *Id.* at 2.

On December 2, 2025, USCIS issued a policy memorandum placing an indefinite hold on applications for adjustment of status filed by Cuban nationals. *Id.* ¶ 15. Defendant issued another policy memorandum on January 1, 2026, stating that applications for adjustment of status and work permits will be withheld indefinitely "until lifted or modified by the USCIS Director." *Id.* ¶ 16. Neither of the policies provide guidance as to if, or when, the USCIS Director will lift the hold. *Id.* ¶ 17. Plaintiff states that although Defendant is not reviewing his Application, he is subject to mandatory detention and removal from the United States. *Id.* ¶ 19. Plaintiff is not currently in removal proceedings. *Id.* at 2. However, USCIS's policy impacts several life

---

[1] Plaintiff filed a Complaint on October 14, 2025. ECF No. [1]. Defendant filed a Motion to Dismiss Plaintiff's Complaint. ECF No. [7]. Plaintiff thereafter filed an Amended Complaint. ECF No. [8].

necessities in Florida that require lawful status, including obtaining a driver's license, access to bank accounts, access to loans, access to education, and freedom to move around in Florida. *Id.* ¶ 20. Plaintiff asserts the indefinite hold without a pause on removal enforcement "guarantees" Plaintiff's removal from the United States despite his eligibility to adjust status. *Id.* ¶ 23.

Plaintiff's Amended Complaint asserts two claims under the Administrative Procedures Act ("APA"): Defendant's policy violates the APA because it is an "arbitrary, capricious, and unlawful" agency action (Count I), and Defendant violates the APA because agency action—adjudication of his Application—is unlawfully withheld or unreasonably delayed (Count II). *Id.* at 12-17. Plaintiff requests that this Court accept jurisdiction of the case; declare Defendant has violated the APA by unreasonably delaying and unlawfully withholding the adjudication of Plaintiff's Application; declare that Defendant's two policy memoranda are arbitrary and capricious, exceed Defendant's statutory authority, or are otherwise contrary to law and procedure; compel Defendant to adjudicate Plaintiff's Application; and award attorney's fees. *Id.* at 17-18.

On February 9, 2026, Defendant filed the instant Motion to Dismiss, claiming that pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), this Court lacks subject matter jurisdiction, Plaintiff lacks standing to bring his claims, and Plaintiff fails to state a claim for relief. ECF No. [11] at 3. In the alternative, Defendant requests the Court to stay these proceedings "in light of USCIS's recent adjudicative hold on certain applications due to national security and public safety concerns." *Id*. Plaintiff responds that this Court has jurisdiction, Plaintiff has standing based on demonstrated injury resulting from Defendant's hold, Plaintiff has stated his claims, and a stay is not justified. ECF No. [13].

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject-matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quotation marks omitted); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.") (citation omitted).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799) and *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)). Once a federal court determines that it is without subject matter jurisdiction, "the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (S.D. Fla. 2023); *see also* Fed.

5

R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quoting *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (internal quotations omitted)). With regard to federal question jurisdiction, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331; *see Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) ("[F]ederal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

## B.  Federal Rule of Civil Procedure 12(b)(6)

When ruling on a Rule 12(b)(6) motion to dismiss, a court generally focuses on the complaint itself. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not impose a requirement of "detailed factual allegations," but it does demand "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive an attack by a Rule 12(b)(6) motion to dismiss, a complaint must therefore contain factual

allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But a complaint may proceed if it contains "enough factual matter (taken as true) to suggest" the elements of the stated claims. *Twombly*, 550 U.S. at 556.

In evaluating the complaint, a court accepts as true the plaintiff's factual allegations and any reasonable inferences drawn from those facts. *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A court need not accept the plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 679. And while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting *S. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).

### C. Stay

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). A court may grant a stay to "promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions." *Axa Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F. Supp. 2d 1330, 1346 (S.D. Fla. 2009). A district court may stay a case pending the resolution of a related case before a different court under a variety of circumstances. *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000). For example, "[a] stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." *Id.* (citing *Clinton*, 520 U.S. 681). District courts may consider "several factors when evaluating a

request for a stay, including prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court." *Owens-Benniefield v. Nationstar Mortg. LLC*, No. 8:17-CV-540-T-33TGW, 2017 WL 1426720, at *2 (M.D. Fla. Apr. 21, 2017). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

### III.   DISCUSSION

#### A.   Subject Matter Jurisdiction

##### 1.   Agency Action is Unlawfully Withheld or Unreasonably Delayed (Count II)

Defendant argues that the Court lacks jurisdiction under the APA to evaluate the pace of adjudication of Plaintiff's Application because no statute or regulation mandates a specific timetable for such adjudication. ECF No. [11] at 5. Specifically, Defendant argues that judicial review is unavailable when "agency action is committed to agency discretion by law," and the CAA "expressly commits the final grant of adjustment to the discretion of USCIS." *Id.* at 5-6. This Court does not have jurisdiction because there is no statutory or regulatory provision dictating how long it should take to adjudicate an application under the CAA, and without any "meaningful standard" by which the Court can judge the pace of adjudication, the Court cannot determine a remedy. *Id.* at 6.

Plaintiff responds that 5 U.S.C. § 701(a)(2) does nor bar judicial review because the exception for action "committed to agency discretion" "is a very narrow exception." ECF No. [13] at 12. Plaintiff argues the U.S. Supreme Court's decision in *Dep't of Homeland Sec. v. Regents*, 591 U.S. 1 (2020), which provided judicial review for the Department of Homeland Security's recission of DACA, applies to USCIS's adjudicative hold. *Id.* at 13. *Regents* instructed that when

8

an agency provides access to benefits, the denial of those benefits is judicially reviewable. *Id.* at 14. Plaintiff argues the CAA is similar to DACA because it provides individuals like Plaintiff access to benefits through their adjustment of status. *Id.* Thus, Defendant's December 2, 2025 and January 1, 2026 memoranda (together "Policy Memoranda"), place an indefinite hold on adjudicating access to those benefits, which is directly analogous to the recission of DACA and thus is similarly reviewable by the courts. *Id.*

Under the APA, courts may "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1), except to the extent that "statutes preclude judicial review[.]" 5 U.S.C. § 701(a)(1). Although there is a "presumption favoring judicial review of administrative action[,]" *Kucana v. Holder*, 558 U.S. 233, 251 (2010), that presumption can be overcome with "clear and convincing evidence" of congressional intent to preclude judicial review. *Id.* at 252 (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)). Defendant cites to one such jurisdiction-stripping provision in the APA, which states that there shall be no judicial review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This means that federal courts are only empowered "to compel an agency to perform a ministerial or non-discretionary act." *Norton v Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The Supreme Court has counseled on multiple occasions that § 701(a)(2)'s scope is "narrow." *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 838 (1985). It precludes review only of action "traditionally left to agency discretion," *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993), and "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Department of Commerce v. New York*, 588 U.S. 752, 772 (2019).

The Court disagrees with Defendant that § 701(a)(2) precludes judicial review over Plaintiff's "unlawfully withheld" claim but agrees that it precludes review of Plaintiff's

"unreasonable delay" claim. While the decision whether to adjust a Cuban national's status to that of a lawful permanent resident undoubtedly is committed to the "discretion" of the executive branch, Pub. L. No. 89–732, 80 Stat. 1161 (1966), USCIS has a nondiscretionary statutory duty to adjudicate applications for lawful permanent resident status based on the CAA and 5 U.S.C. § 555. That is, the APA expressly provides that agencies presented with a matter "shall proceed to conclude" it "within a reasonable time." 5 U.S.C. § 555. The operative word here is "shall," which signifies that the agency may not opt for inaction entirely. And the CAA, reproduced as a note to 8 U.S.C. § 1255, expressly provides that it does not modify the Attorney General's duties under the INA. Pub. L. No. 89–732, 80 Stat. 1161 (1966).

Thus, to the extent Plaintiff alleges in Count II that Defendant has failed to act and has withheld agency action, the Court finds that it possesses jurisdiction to review the matter. Indeed, several courts have found that the duty to act on an application and to adjudicate it is nondiscretionary. *See Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007) (finding that, with respect to an I-485 application, USCIS "has a non-discretionary duty to *act* on an application, a discretionary duty as to the *pace* of processing the application, and a non-discretionary duty to *adjudicate* an application."); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 154 (D. Mass. June 26, 2007) ("[w]hile it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all."); *Joshua v. Jaddou*, No. JRR-24-00667, 2025 WL 449001, at *7 (D.Md. Feb. 10, 2025) ("[T]he duty to adjudicate a Form I-485 is non-discretionary." (quoting *Mokuolu v. Mayorkas*, No. RDB-24-817, 2024 WL 4783542, at *5 (D.Md. Oct. 1, 2024))). Courts have even found this to be the case within the context of these policy memoranda. *See, e.g., Doe et al. v. Trump et al.*, No. 1:25-CV-13946-

JEK, 2026 WL 1170971, at \*11 (D. Mass. Apr. 30, 2026) ("[T]he application of the adjudicative hold policy to adjustment of status applications is not a matter committed to agency discretion.").

Importantly, this case is distinguishable from *Kanapuram v. Director, U.S. Citizenship & Immigration Services*, 131 F.4th 1302 (11th Cir. 2025), a visa retrogression case. There, the Eleventh Circuit—aligning with several other Courts of Appeals—held that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of USCIS's decision to hold adjustment of status applications in abeyance until visa numbers become available. *Id.* at 1307; *see also Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025); *Geda v. USCIS*, 126 F.4th 835, 842 (3d Cir. 2024); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024), *cert. denied*, 145 S.Ct. 1126 (2025); *Thigulla v. Jaddou*, 94 F.4th 770, 777 (8th Cir. 2024).

Visa retrogression, however, "stands on a different factual and legal footing than the adjudication hold implemented under" the Policy Memoranda at issue here. *Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490, at \*7 (N.D. Cal. Feb. 20, 2026). In the visa retrogression context, adjustment of status applications are held in abeyance until a particular "condition precedent" has been met—namely, the availability of visa numbers. By contrast, the adjudicatory hold here is indefinite, with no specific condition precedent required to be satisfied.[2] ECF No. [8-1] at 6 ("This hold will remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum or memorandum attachment."); *see also Varniab*, 2026 WL 485490, at \*7 ("Defendants have not identified the 'condition precedent' for the PM-0192 adjudication hold to be lifted, and no end point is apparent from the Policy Memorandum itself."). In other words,

---

[2] Indeed, the adjudicative hold here appears all the more indefinite when one considers that USCIS has exceeded its own timeline *twice*. That is, in PM-602-0192, USCIS indicated that it would, "[w]ithin 90 days of issuance of this memorandum, . . . issue operational guidance." ECF No. [8-1] at 11. That 90 days expired on March 2, 2026. And in PM-602-0194, USCIS again indicated that it would, "[w]ithin 90 days of this memorandum issuance, . . . issue operational guidance." *Id.* at 8. That 90-day period lapsed on April 1, 2026.

the polices at issue in *Kanapuram* were a clear exercise of discretion compelled by visa limits set by Congress in the statutory scheme. By contrast, nothing in the INA, CAA, or APA specifies that USCIS has discretion to cease adjudicating adjustment of status applications altogether for applicants from particular countries.

However, the Court finds that it lacks jurisdiction over Plaintiff's "unreasonable delay" claim, included in Plaintiff's Count II. Congress has not provided a timeframe in which immigration applications like Plaintiff's are required to be adjudicated. At most, Congress has indicated in 8 U.S.C. § 1571(b) that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." But the Eleventh Circuit has made clear that "should" is "permissive, rather than mandatory, language." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). The Fifth Circuit explained it well, stating that 1571(b)'s "sense of Congress" language "merely expresses Congress's sense of the adjudicative process," and does not indicate that USCIS has a "plainly prescribed" duty to adjudicate a petition within any specific timeframe. *See Bian v. Clinton*, 605 F.3d 249, 255 (5th Cir. 2010), *vacated on other grounds by Bian v. Clinton*, 2010 WL 3633770 (5th Cir. Sept. 16, 2010).

The Court is far from alone in this conclusion. Courts in this Circuit are clear that the *pace* of adjudication is discretionary, and courts are without jurisdiction to hear claims arising from a delay in adjudication. *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (holding that district courts are without jurisdiction to consider complaints regarding "the pace at which immigration decisions are made" in a case involving I-485 applications); *Eldeeb*, 619 F. Supp. 2d at 1205 (M.D. Fla. 2007) (finding that, with respect to an I-485 application, USCIS "a discretionary duty as to the *pace* of processing the application"); *Orabi v. Chertoff*, 562 F. Supp. 2d 1377, 1380

12

(N.D. Ga. 2007) (finding court did not have jurisdiction over claim of delayed consideration of adjustment of status application); *Torres v. Chertoff*, No. 1:07CV01649 WSD, 2007 WL 4261742, at *5 (N.D. Ga. Nov. 30, 2007) (finding APA "expressly preclude[ed] jurisdiction" over complaint regarding pace of adjustment of status application consideration). As such, because the pace of adjudication is discretionary, the Court is without jurisdiction to address Plaintiff's "unreasonably delayed" portion of Count II. Accordingly, Count II is dismissed to the extent it argues unreasonable delay.

## 2.   Agency Action is Arbitrary, Capricious, and Unlawful (Count I)

Defendant does not argue the Court lacks jurisdiction over Plaintiff's claim that Defendant's policy is arbitrary, capricious, and unlawful. *See* ECF No. [11]. Though Defendant does not advance specific arguments, the Court is obliged to *sua sponte* determine its own jurisdiction. *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) ("Federal courts 'are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking.'" (quoting *Galindo–Del Valle v. Att'y Gen.*, 213 F.3d 594, 599 (11th Cir. 2000))).

The APA provides that a court "shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). A suit under the APA is proper when:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. However, courts lack jurisdiction to review agency actions when the action is not "final" as defined by the APA. *Id.* Under the APA, "[a]gency action made reviewable by statute

and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. A final agency action is one that "mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it must be an action "by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016). Courts have held that "significant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate." *Massachusetts v. Trump*, 790 F. Supp. 3d 8, 26 (D. Mass. 2025) (citing cases). "[A]t a certain point, an agency's ongoing characterization of its action as 'temporary' rings hollow." *Doe et al.*, 2026 WL 1170971, at *6.

Here, the Policy Memoranda present as an interim hold until Defendant "[c]onduct[s] a comprehensive review of all policies, procedures, and screening and vetting processes." *See* ECF No. [8-1] at 4. Although framed as a temporary hold, Defendant twice failed to meet the 90-day timeframe to issue operational guidance and has not specified the conditions by which the USCIS Director may lift or modify the hold. Thus, the Policy Memoranda is akin to placing an indefinite blanket moratorium on adjudication of applications filed by applicants from particular countries. The Court finds the Policy Memoranda represent a final agency action.

Determining whether legal consequences flow from the agency's action involves a "pragmatic" approach that includes whether the action "determines the rights or obligations of [] the relevant actors or regulated bodies. *Doe et al.*, 2026 WL 1170971, at *7 (citing *Hawkes*, 578 U.S. at 598-600). Here, USCIS officers are prevented from issuing final decisions on applications received from individuals from particular countries. ECF No. [8-1] at 4 n.2. And the Policy Memoranda prevent Plaintiff, and others similarly situated, from receiving a decision on their

14

applications, as mandated by statute. *See* 5 U.S.C. § 555. If Plaintiff and others are eligible to adjust status, the hold prevents their access to the benefits afforded by becoming lawful permanent residents. Regardless of eligibility to adjust status, not receiving an answer to his application places Plaintiff in legal limbo. *See Doe et al.*, 2026 WL 1170971, at *7 ("[T]he plaintiffs are suffering the consequences of the policies. Those plaintiffs subject to the adjudicative hold are in indefinite limbo with respect to their applications for naturalization, work authorization, lawful permanent resident status, and asylum, affecting all manner of life plans."); *Varniab*, 2026 WL 485490, at *17 ("Here, the agency's position was definitive and the legal consequences for Plaintiffs were real[.]") (alterations adopted) (internal quotation and citation omitted).

Other courts have come to the same conclusion. *See Doe et al.*, 2026 WL 1170971, at * 7 ("Both policies are therefore final agency actions subject to review under the standards set forth in the APA."); *Varniab*, 2026 WL 485490, at *16-17 (same); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1069-70 (W.D. Wash. 2017) (same). The Court finds it has subject matter jurisdiction to review Plaintiff's claim that USCIS's policy, as reflected in the Policy Memoranda, is an arbitrary and capricious agency action.

### B. Standing

Defendant argues the Court lacks jurisdiction because Plaintiff has failed to establish standing. ECF No. [11] at 7. Specifically, Plaintiff has not established an injury in fact when the Policy Memoranda do not state the hold is indefinite and any risk of detention and removal is mere conjecture of events that have not yet occurred. *Id.* at 7-8. Moreover, Plaintiff cannot prove redressability because the Court lacks jurisdiction to order the relief Plaintiff seeks until the current hold ordered by USCIS's Director "at the behest of the President" is lifted. *Id.* at 8. The current

hold is a discretionary executive action, and "the Court lacks jurisdiction to compel any action to the contrary." *Id*. at 9.

Plaintiff responds that Defendant's policy is indefinite because Defendant "has made it clear that no final decisions will be issued on [applicable] cases until further notice." ECF No. [13] at 3. He has suffered injury because he is in "legal limbo with no forum to have [his] claims heard," he is subject to mandatory detention if the Government initiates removal proceedings, and Plaintiff's injury is beyond pure conjecture considering the Government's efforts to "deliver[] the single largest Mass Deportation Program in History" and cases of similarly situated individuals placed in rapid removal procedures. *Id.* at 4-6.

Under Article III of the Constitution, federal courts are limited to adjudicating only "Cases and Controversies." U.S. Const Art. III § 2; *see Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1299, 1232 (11th Cir. 2008). For a case or controversy to exist, the Plaintiff must have standing to bring the action. *See I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Standing is one of the Article III case or controversy requirements."). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004). "To have standing, the plaintiff[] must demonstrate injury in fact, causation, and redressability." *Id.* All three must exist before a federal court may exercise jurisdiction over the case. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1225 (S.D. Fla. 2020).

The Court finds that Plaintiff has standing because the Court has jurisdiction to consider Plaintiff's "unlawfully withheld" and "arbitrary and capricious" claims, so relief "is available through a court order invalidating the [Policy Memoranda] on one or more of the grounds advanced by Plaintiff[]." *Abdulraheemzai, et al., v. Noem, et al.*, No. 25-CV-05098-JST, 2026 WL 1113722, at *5 (N.D. Cal. Apr. 24, 2026) (citing *Ghahrisarabi v. Noem*, No. 25-CV-08546-KAW, 2026 WL 194738, at *1 (N.D. Cal. Jan. 26, 2026)).

### C. Merits of the Claims

#### 1. Agency Action is Unlawfully Withheld[3] (Count II)

Defendant argues that "Plaintiff cannot establish that USCIS has failed to adjudicate his [Application] within a required time frame under statute or regulation." ECF No. [11] at 10. Moreover, Defendant contends that "the plain language of relevant federal statutes, in the absence of congressionally mandated timelines, and the national security considerations implicated by the adjudication process all support that the pace of adjudication is discretionary." *Id.* at 11. Even if Plaintiff could show unreasonable delay, Defendant argues that Plaintiff has not alleged sufficient prejudice to state a claim under 5 U.S.C. § 706, because the "uncertainty and the ability to move forward with the normal course of life are inherent risks of engaging in the immigration process." *Id.* Plaintiff responds that Defendant's policy "amounts to an indefinite hold," and that there is no rule of reason governing if or whether the hold will be lifted. ECF No. [13] at 8-9. Plaintiff further argues Defendant minimizes the impacts felt as a result of the hold, which are not part of the

---

[3] The Amended Complaint asserts in Count II that agency action is unlawfully withheld or unreasonably delayed. ECF No. [8]. For the reasons discussed above, this Court does not have jurisdiction to review claims that Defendant's actions are unreasonably delayed. As such, Count II is dismissed to the extent it argues unreasonable delay. This Court has jurisdiction to review Count II to the extent it argues agency action is unlawfully withheld.

"normal course of life" or "inherent risks of engaging in the immigration process" but they "directly affect Plaintiff's welfare" and impact his "ability to survive." *Id.* at 9.

The Court agrees with Plaintiff and finds that dismissal is not warranted for largely the same reasons as in its subject matter jurisdiction analysis above. As described above, the APA provides that a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). The Court—and several other courts in this circuit to consider the issue—have held that this confers on USCIS a non-discretionary duty to adjudicate applications for adjustment of status. *See Choudhry v. Chertoff*, No. 1:07-CV-426-CAP, 2007 WL 9706374, at *3 (N.D. Ga. Mar. 12, 2007) ("Relying on § 6 of the APA, the majority of district courts have concluded that they do have subject matter jurisdiction to compel the government to adjudicate an application for adjustment of status."); *Eldeeb*, 619 F. Supp. 2d at 1205 (finding that, with respect to an I-485 application, USCIS has "a non-discretionary duty to *adjudicate* an application."); *Tang*, 493 F. Supp. 2d at 154 ("While it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all."); *Joshua*, 2025 WL 449001, at *7 ("[T]he duty to adjudicate a Form I-485 is non-discretionary." (quoting *Mokuolu*, 2024 WL 4783542, at *5 (D. Md. Oct. 1, 2024))); *Poliakova v. Gonzalez*, No. 08-20143-CIV, 2008 WL 11331851, at *3 (S.D. Fla. Apr. 7, 2008) (distinguishing "a situation where [US]CIS is refusing to take any action to process Plaintiff's [I-485] Application").

Plaintiff has adequately alleged that USCIS is refusing to adjudicate his application at all, pointing to the specific Policy Memoranda that dictate this result. As such, the Court finds that

Count II states a claim as to its assertion that USCIS has withheld agency action. Defendant's Motion to Dismiss for failure to state a claim is denied as to Count II.

### 2.   Agency Action is Arbitrary, Capricious, and Unlawful (Count I)

Defendant does not raise any independent arguments that Count I of the Complaint fails to state a claim. *See generally* ECF No. [11]. Defendant states that Plaintiff acknowledges Defendant's rationale for implementing the policy but is "dissatisfied" with the basis. *Id.* at 10. Defendant argues "the national security incidents giving rise to the hold cannot be disputed, and constitute a rational basis for additional vetting to be conducted when reviewing pending applications." *Id.* at 10-11. Plaintiff responds that merely "referring to the government's interest in protecting the homeland and citing to two instances where immigrants from Afghanistan had committed heinous crimes after becoming lawful permanent residents" does not satisfy Defendant's obligation to articulate a reasoned explanation for the hold. ECF No. [13] at 11. Nor did Defendant provide any indication regarding its decisionmaking process, balancing of interests, or what data, evidence, or factors the agency considered before adopting its policy. *Id.*

"Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). The "agency must at least display awareness that it is changing position and show that there are good reasons for the new policy." *Id.* (internal quotations omitted). A reasoned explanation must consider reliance interests and why the agency is now "disregarding facts and circumstances that underlay" the prior policy. *Id.* "An unexplained inconsistency in agency policy is a reason for holding [a new action] to be an arbitrary and capricious change from agency practice." *Id.*

19

Here, Plaintiff's Amended Complaint alleges that the reasons Defendant provides for issuing the Policy Memoranda are insufficient to constitute a reasoned explanation. The Amended Complaint states the Policy Memoranda fail to identify what data, evidence, or factors Defendant considered before deciding to implement a hold for those with applications already pending and capable of being reviewed under the policies currently in place, which already assess an individual's threat to national security. ECF No. [8] ¶¶ 48, 51. Defendant's response as to the legitimacy of national security concerns asserts the merits of the underlying rationale but does not explain the data, factors, or evidence underlying the conclusion that the hold serves national security. The Policy Memoranda state:

> USCIS has considered that this direction may result in delay to the adjudication of some pending applications and has weighed that consequence against the urgent need for the agency to ensure that applicants are vetted and screened to the maximum degree possible. Ultimately, USCIS has determined that the burden of processing delays that will fall on some applicants is necessary and appropriate in this instance, when weighed against the agency's obligation to protect and preserve national security.

ECF No. [8-1] at 7, 11. However, those statements are conclusory and do not identify the data, factors, or evidence it considered when weighing the consequences. Moreover, the Policy Memoranda do not explain why a hold on currently pending applications is necessary to implement Proclamation 10949, which restricted the *entry* of individuals from particular countries. Thus, Plaintiff has stated a claim that Defendant did not provide a reasoned explanation for its policy change. As such, Defendant's Motion to Dismiss is denied as to Count I.

**D. Motion for Stay**

Defendant argues that, in the alternative to dismissal, the Court should stay this case. ECF No. [11] at 11. Defendant argues that Plaintiff will not be prejudiced because USCIS cannot grant relief while the hold is in place and a stay is warranted "considering the national security concerns

which prompted the Executive Branch's hold on adjudications of applications like that of Plaintiff's." *Id.* at 11-12. Thus, Defendant "request[s] a stay of these proceedings until the hold is lifted or further guidance is provided by USCIS regarding the adjudication hold." *Id*. at 12. Plaintiff responds that Defendant's request to stay until the hold is lifted "offers no end" because the hold is indefinite. ECF No. [13] at 5.

As noted above, the Court may consider "several factors when evaluating a request for a stay, including prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court." *Owens-Benniefield*, 2017 WL 1426720, at *2. It is Defendant's burden to show a stay is justified. *Nken*, 556 U.S. at 434.

Here, Plaintiff's claims arise from Defendant's Policy Memoranda that effectively place an indefinite hold on adjudicating Plaintiff's Application. Defendant has a statutory obligation to issue a final decision on Plaintiff's Application. *See* CRAA, Pub. L. No. 89–732, 80 Stat. 1161 (1966); 5 U.S.C. § 555. But Defendant states that "there is no relief that can otherwise be granted by USCIS while the hold is in place" because "adjudication is prohibited by Executive action." ECF No. [11] at 11-12. In effect, Defendant admits that they are not adjudicating Plaintiff's application; they are withholding an action that they are required to take. Yet, Defendant asks that this Court stay proceedings "until the hold is lifted or further guidance is provided by USCIS regarding the adjudication hold." ECF No. [11]. As discussed above, Defendant twice failed to adhere to its own deadlines and has identified no conditions to inform the lifting or modification of the hold. Thus, Defendant asks this Court to grant a stay dependent on the very agency action Plaintiff challenges. Granting such a stay is effectively dismissing Plaintiff's claims on the merits.

The Court declines to do so. Defendant has not established other justifications to overcome the prejudice to Plaintiff caused by a stay. Therefore, the Court finds that a stay is not warranted.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss, **ECF No. [11]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Count II is **DISMISSED** to the extent it argues that agency action is unreasonably delayed.

3. Defendant's Motion to stay proceedings is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 21, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

22